IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.

MOSES D. DEGRAFT-JOHNSON
  and
KIMBERLY J. AUSTIN
_____/

SEALED
<u>INDICTMENT</u>

4:20cr4-MW

THE GRAND JURY CHARGES:

COUNT ONE
Conspiracy to Commit Health Care Fraud
18 U.S.C. §1349

I.    INTRODUCTION

Unless stated otherwise, at all times relevant to this Indictment:

A.    **The Practice**

1.    The defendant, **MOSES D. DEGRAFT-JOHNSON**, was a physician licensed by the State of Florida. **DEGRAFT-JOHNSON** possessed Florida medical license number 106359. Between on or about September 21, 2015, and on or about February 4, 2020, **DEGRAFT-JOHNSON** owned and operated Thorvasc PA, a Florida corporation doing business as the Heart and Vascular Institute of North Florida ("HVINF"). HVINF was a physician's office and outpatient catheterization laboratory located in Tallahassee, Florida.

2. The defendant **KIMBERLY J. AUSTIN** was the office manager of HVINF.

3. Company A, operating in the Northern District of Florida, was engaged in the business of billing health care benefit programs on behalf of medical providers.

4. The defendants caused health care benefit programs to be billed for benefits, items, and services provided to patients of HVINF. At defendants' direction, Company A submitted claims to health care benefit programs on behalf of HVINF.

**B.  The Health Care Benefit Programs**

5. The term "health care benefit program" as defined in Title 18, United States Code, Section 24, meant any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract.

6. The Medicare program was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

7. Medicare was administered by the Centers for Medicare and Medicaid Services (CMS), a federal agency under the United States Department of Health and Human Services. Medicare was funded by federal tax dollars. Medicare Part B covered outpatient services. Outpatient medical services are medical procedures or tests that are done in a qualified medical center without the need for an overnight stay.

8. First Coast Service Options, Inc. ("FCSO"), located in Jacksonville, Florida, was the fiscal agent that processed the claims and maintained the records for the Medicare program in Florida.

9. Provider participation in the Medicare program was voluntary. A participating provider was a person, organization, or institution with a valid participation agreement who or which would: (1) provide the service, (2) submit the claim, and (3) accept as payment in full the amount paid by the program. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

10. By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all the provisions of the Social Security Act, the regulations promulgated under the

Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.

11. Upon certification, the medical provider, whether a clinic or an individual, was assigned a provider identification number for billing purposes (referred to as a PIN). When the medical provider rendered a service, the provider submitted a claim for reimbursement to the Medicare contractor/carrier that included the PIN assigned to that medical provider.

12. Each provider that became a certified Medicare provider was issued a manual or provided with online access to regulations outlining participation requirements and guidelines. The Medicare Claims Processing Manual, issued by CMS, was publicly available, and offers day-to-day operating instructions, policies, and procedures based on statutes and regulations, guidelines, models, and directives for Medicare Part B.

13. To receive Medicare reimbursement for covered services set forth in the manual, the provider submitted Medicare claims for payment via mail and electronic submission to FSCO. When a provider submitted a claim to Medicare, it included information such as the beneficiary's name and address, Medicare number, the date and type of service provided, the place of service, the procedure code, the diagnosis code, the amount billed, and other relevant medical information. One of the critical conditions for any payment was that the service

had actually been provided for a legitimate, medically necessary purpose. Medicare only reimburses services that were medically necessary and actually rendered. Once a claim was approved, payment was either mailed to the provider or electronically transferred to the provider.

14. The defendant **MOSES D. DEGRAFT-JOHNSON** was an authorized provider under the Medicare program.

15. The Florida Medicaid Program ("Florida Medicaid") was a partnership between the State of Florida and the federal government that provided medical assistance and healthcare coverage to eligible low-income Florida families and individuals ("Florida Medicaid recipients"). Florida Medicaid was authorized by Title XIX of the Social Security Act, Chapter 409, Florida Statutes, and Chapter 59G, Florida Administrative Code. Florida Medicaid is financed with both federal and state funds, and was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

16. The Agency for Health Care Administration ("AHCA") was a State of Florida agency responsible for Florida Medicaid. Each Florida Medicaid recipient was issued a unique ID number ("Medicaid recipient ID number") by AHCA, which was used in the submission of Florida Medicaid claims, determination of Florida Medicaid eligibility, and for processing and adjudicating Florida Medicaid claims.

17. Under Florida Medicaid, a Florida Medicaid provider ("Provider") was a person, organization, or institution having a written agreement with the State of Florida and its Managed Care Organizations ("MCOs") to: (1) provide services to recipients, (2) submit claims for services rendered, and (3) accept as payment in full the amount paid by Florida Medicaid for submitted claims. Providers were required to possess and maintain a valid professional license pertinent to the services they were providing to Florida Medicaid recipients, and were required to comply with all applicable rules and regulations. Each provider was issued a manual or was provided with online access to regulations outlining participation requirements and guidelines. Each provider was issued a unique Florida Medicaid ID number ("Medicaid provider ID number") by AHCA which was used in the submission, processing, and payment of Florida Medicaid claims.

18. When a provider submitted claims to Florida Medicaid, it included information such as the recipient's name and address, the recipient's Medicaid recipient ID number, the date and type of service provided, the place of service, the rendering provider's Medicaid provider ID number and name, the procedure code, the diagnosis code, the amount billed, and other relevant medical or health information.

19. DXC Technology was located in Tallahassee, Florida, and was the fiscal agent for the State of Florida that administered Florida Medicaid funds to

providers in Florida. DXC Technology was under contract with AHCA to receive claims from participating providers generally by means of electronic submission through an Internet web portal. For each provider claim received, DXC Technology would assign a distinct and specific Internal Control Number ("ICN") and subsequently would coordinate the verification of each claim through an electronic remittance voucher ("ERV") system.

20.  WellCare was an MCO that provided for the delivery of Medicaid health benefits and services through contracted arrangements with AHCA.

21.  AHCA and MCOs would ensure that each electronically submitted claim was from a valid provider, for a valid recipient, and for a valid Florida Medicaid service. To be eligible to submit claims to Florida Medicaid and receive Florida Medicaid reimbursement, a person, organization, or institution had to be an authorized provider with Florida Medicaid or one of its MCOs.

22.  AHCA would pay reimbursements to providers via electronic funds transfer ("EFT") into the providers' account at a designated financial institution, or via a flat per-member, per-month fee to the MCOs from which the MCOs would pay claims submitted by providers. Providers submitted claims to Florida Medicaid using standardized codes to describe the diagnosis (*i.e.* diagnosis code) and the procedures (*i.e.* procedure code) for which payment was sought. Each

procedure was submitted to Florida Medicaid as a "claim line," and one or more claim lines constituted a claim.

23. The defendant **MOSES D. DEGRAFT-JOHNSON** was an authorized provider under the Florida Medicaid program.

24. Blue Cross Blue Shield of Florida ("Florida Blue") was a company with its headquarters in Jacksonville, Florida, that provided health insurance to members and issued payments to providers for covered medical services. Florida Blue was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

25. The defendant **MOSES D. DEGRAFT-JOHNSON** was an authorized provider for Florida Blue at HVINF.

26. Capitol Health Plan ("CHP") was a company with its headquarters in Tallahassee, Florida, that provided health insurance to members and issued payments to providers for covered medical services. CHP was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

27. The defendant **MOSES D. DEGRAFT-JOHNSON** was an authorized provider for CHP at HVINF.

C. **Medical Billing Codes**

28. The American Medical Association assigns and publishes numeric codes, known as the Current Procedural Terminology (CPT) and Health Care

8

Procedure Common Coding System (HCPCS) codes. The codes were a systematic listing, or universal language, used to describe the procedures and services performed by health care providers.

29. The procedures and services represented by the CPT and HCPCS codes were health care benefits, items, and services within the meaning of Title 18, United States Code, Section 24(b). They included codes for office visits, diagnostic testing and evaluation, and other services. Health care providers used CPT and HCPCS codes to describe the services rendered in their claims for reimbursement to health care benefit programs.

30. Health care benefit programs, including Medicare, Florida Medicaid, WellCare, Florida Blue, and CHP, used these codes to understand and evaluate claims submitted by providers and to decide whether to issue or deny payment. Each health care benefit program established a fee or reimbursement level for each service described by a CPT or HCPCS code.

31. Health care providers often sought reimbursement from insurance carriers on CMS Form 1500. On the form, the provider identified itself by its Provider Identification Number (PIN) or Tax Identification Number (TIN), identified the beneficiary who received the services, described the illness or injury that made the services medically necessary, and identified the services provided by

CPT and HCPCS codes. The insurance carrier would issue a payment or denial in response to the information contained in each CMS Form 1500.

32. "Upcoding" referred to the illegal practice of billing at a higher CPT code than the service which was actually performed.

## II. THE CHARGE

33. Between in or about November 2015, and on or about February 4, 2020, in the Northern District of Florida and elsewhere, the defendants,

**MOSES D. DEGRAFT-JOHNSON**
**and**
**KIMBERLY J. AUSTIN,**

did knowingly and willfully conspire, combine, confederate, and agree together and with other persons to commit offenses against the United States, namely: to execute a scheme to defraud health care benefit programs and to obtain, by means of material false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

## III. MANNER AND MEANS

34. The conspirators agreed that **MOSES D. DEGRAFT-JOHNSON** would unlawfully enrich himself and others by, among other things: (a) submitting or causing to be submitted false and fraudulent claims through HVINF and

Company A to health care benefit programs for claims that were upcoded; (b) submitting or causing to be submitted through HVINF and Company A false and fraudulent claims to health care benefit programs for services that were never provided, including interventional vascular surgical procedures; (c) falsifying records that were used to support false and fraudulent claims to health care benefit programs; (d) concealing the submission of false and fraudulent claims to health care benefit programs, and the receipt and transfer of the proceeds from the fraud; and (e) diverting proceeds of the fraud for the personal use and benefit of the defendants and others.

35.  The conspirators have implemented a fraud scheme to bill and obtain money from health care benefit programs for interventional vascular procedures which were never performed. The procedures are known as balloon angioplasty and atherectomy, using CPT Codes 37225, 37227, 37228, and 37229. For balloon angioplasty, a special catheter (a long, thin, hollow tube) is inserted into a blood vessel and guided to the blocked artery. The catheter has a tiny balloon at its tip. Once the catheter is in place, the balloon is inflated at the narrowed area of the blood vessel. This presses the fatty tissue against the sides of the artery, widening the blood vessel and making more room for blood flow. A balloon angioplasty may be accompanied by an atherectomy, a procedure to open blocked coronary arteries or vein grafts by using a device on the end of a catheter to cut or shave

away atherosclerotic plaque (a deposit of fat and other substances that accumulate in the lining of the artery wall).

36. The conspirators' scheme was, among other things, that patients visiting HVINF would often receive a procedure known as a diagnostic angiography whether medically necessary or not. In this procedure, a small tube, a catheter, is guided under video x-ray to the arteries of interest. A fluid which is dense on x-rays, called contrast, is injected through the tube to fill the vessels and visualize the anatomy. From this procedure, the diagnosis of the various disorders and injuries to the blood vessels can be made. This procedure is done to determine what heart disease may be present and what corrective procedures are medically necessary. However, the defendants often billed health care benefit programs for the much more expensive interventional procedures of balloon angioplasty and atherectomy when only a diagnostic angiography had been performed, or where no procedure was performed at all. The defendants engaged in a pattern of performing two diagnostic angiographies—one on each leg—and each followed by a follow-up office visit, and then billing health care benefit programs for *four* or more interventional procedures—balloon angioplasty with atherectomy—when such procedures had not been performed.

37. The defendants used **DEGRAFT-JOHNSON**'s privileges at a local hospital to contact patients recently treated at said hospital and schedule them for

medically unnecessary appointments at HVINF for purposes of subsequently billing health care benefit programs for interventional vascular procedures which were not performed.

38. The defendants caused the submission of claims to health care benefit programs for surgeries falsely claimed to have been performed on dates where **DEGRAFT-JOHNSON** was not in the HVINF office and-or was not in the United States and was in fact traveling abroad to locations including Madrid, Spain; London, United Kingdom; Accra, Ghana; and Shanghai, China.

39. The defendants perpetrated this fraudulent scheme by, among other things, falsifying test results to substantiate claims for procedures which were never performed, making false operative reports signed by **DEGRAFT-JOHNSON**, making false written statements to health care benefit programs to justify multiple successive procedures which were not performed, forging informed consent forms, and other documents, to substantiate false claims for reimbursement to health care benefit programs.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS TWO THROUGH FIFTY-SEVEN
### Health Care Fraud
### 18 U.S.C. §1347

40. Paragraphs 1 through 39 are re-alleged and incorporated by reference here.

41. On or about the following dates, in the Northern District of Florida and elsewhere, the defendant,

**MOSES D. DEGRAFT-JOHNSON**

did knowingly and willfully execute and attempt to execute a scheme to defraud a health care benefit program, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of a health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

42. For the purpose of executing this scheme to defraud, the defendant, **MOSES D. DEGRAFT-JOHNSON**, caused fraudulent claims, for services not rendered, to be submitted as follows:

| COUNT | DATE OF SERVICE | CLAIM DATE | PATIENT INITIALS | CPT CODE | PROGRAM | AMOUNT CLAIMED |
|---|---|---|---|---|---|---|
| 2 | 11/21/2017 | 11/22/2017 | T.M.L. | 37225 | Florida Blue | $21,752.00 |
| 3 | 11/21/2017 | 11/22/2017 | D.F.L. | 37225 | Florida Blue | $21,752.00 |
| 4 | 11/27/2017 | 11/28/2017 | T.M.L. | 37229 | Florida Blue | $21,478.00 |
| 5 | 11/27/2017 | 11/28/2017 | D.F.L | 37229 | Florida Blue | $21,478.00 |
| 6 | 12/12/2017 | 12/13/2017 | T.M.L. | 37225 | Florida Blue | $21,752.00 |
| 7 | 12/12/2017 | 12/13/2017 | D.F.L | 37225 | Florida Blue | $21,752.00 |
| 8 | 12/21/2017 | 12/23/2017 | T.M.L. | 37229 | Florida Blue | $21,478.00 |
| 9 | 12/21/2017 | 12/23/2017 | D.F.L. | 37229 | Florida Blue | $21,478.00 |
| 10 | 3/12/2018 | 03/22/2018 | L.D. | 37229 | WellCare | $21,478.00 |
| 11 | 4/19/2018 | 04/23/2018 | J.F.D.P. | 37229 | Medicare | $21,478.00 |
| 12 | 05/08/2018 | 05/10/2018 | J.F.D.P. | 37229 | Medicare | $21,478.00 |
| 13 | 05/30/2018 | 05/31/2018 | R.J.L. | 37225 | Medicare | $21,752.00 |
| 14 | 06/06/2018 | 06/08/2018 | B.M.W. | 37225 | CHP | $21,752.00 |
| 15 | 06/14/2018 | 06/15/2018 | B.M.W. | 37229 | CHP | $21,478.00 |
| 16 | 06/15/2018 | 06/25/2018 | R.J.L. | 37229 | Medicare | $21,478.00 |
| 17 | 07/09/2018 | 07/10/2018 | R.J.L. | 37225 | Medicare | $21,752.00 |
| 18 | 07/11/2018 | 07/12/2018 | B.M.W. | 37225 | CHP | $21,752.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 19 | 07/12/2018 | 07/17/2018 | R.J.L. | 37229 | Medicare | $21,478.00 |
| 20 | 07/19/2018 | 07/24/2018 | B.M.W. | 37229 | CHP | $21,478.00 |
| 21 | 10/23/2018 | 11/07/2018 | L.S.W. | 37229 | Medicare | $21,478.00 |
| 22 | 10/26/2018 | 11/07/2018 | E.H. | 37229 | Florida Blue | $21,478.00 |
| 23 | 10/30/2018 | 11/02/2018 | F.S. | 37225 | Medicare | $21,752.00 |
| 24 | 10/30/2018 | 11/07/2018 | N.M. | 37229 | WellCare | $5,000.00 |
| 25 | 11/13/2018 | 11/20/2018 | C.S. | 37229 | Medicare | $21,478.00 |
| 26 | 11/13/2018 | 11/20/2018 | M.W. | 37229 | WellCare | $21,478.00 |
| 27 | 12/18/2018 | 12/24/2018 | A.B.B. | 37225 | CHP | $21,752.00 |
| 28 | 12/18/2018 | 12/24/2018 | D.Y.S. | 37229 | CHP | $21,478.00 |
| 29 | 12/19/2018 | 12/24/2018 | A.B.B. | 37229 | CHP | $21,478.00 |
| 30 | 12/19/2018 | 12/26/2018 | J.W. | 37229 | Medicare | $21,478.00 |
| 31 | 12/19/2018 | 12/25/2018 | H.R. | 37229 | CHP | $21,478.00 |
| 32 | 12/19/2018 | 12/21/2018 | L.N. | 37229 | Medicare | $21,478.00 |
| 33 | 12/19/2018 | 12/22/2018 | T.G. | 37229 | Florida Blue | $21,478.00 |
| 34 | 12/19/2018 | 12/26/2018 | H.A. | 37229 | Medicare | $21,478.00 |
| 35 | 12/19/2018 | 12/21/2018 | M.D. | 37229 | Medicare | $21,478.00 |
| 36 | 01/14/2019 | 01/25/2019 | M.B. | 37229 | CHP | $21,478.00 |
| 37 | 01/14/2019 | 01/24/2019 | C.B. | 37229 | Florida Blue | $21,478.00 |
| 38 | 01/15/2019 | 01/25/2019 | H.R. | 37229 | CHP | $21,478.00 |
| 39 | 01/15/2019 | 01/25/2019 | P.M.R. | 37229 | CHP | $21,478.00 |
| 40 | 01/15/2019 | 01/25/2019 | D.H. | 37229 | Medicare | $21,478.00 |
| 41 | 02/05/2019 | 02/06/2019 | E.W. | 37225 | Florida Blue | $21,752.00 |
| 42 | 02/12/2019 | 03/04/2019 | D.H. | 37229 | Medicare | $21,478.00 |
| 43 | 02/15/2019 | 02/19/2019 | E.W. | 37229 | Florida Blue | $21,478.00 |
| 44 | 02/18/2019 | 02/19/2019 | E.W. | 37225 | Florida Blue | $21,752.00 |
| 45 | 02/20/2019 | 02/21/2019 | E.W. | 37229 | Florida Blue | $21,478.00 |
| 46 | 03/11/2019 | 03/21/2019 | G.S. | 37229 | Medicare | $21,478.00 |
| 47 | 03/12/2019 | 03/22/2019 | C.S.T | 37229 | CHP | $21,478.00 |
| 48 | 03/12/2019 | 03/22/2019 | I.B.S. | 37229 | CHP | $21,478.00 |
| 49 | 03/12/2019 | 03/21/2019 | J.G. | 37229 | Florida Blue | $21,478.00 |
| 50 | 03/13/2019 | 03/21/2019 | R.S. | 37229 | Florida Blue | $21,478.00 |
| 51 | 04/25/2019 | 05/02/2019 | C.G. | 37229 | Medicare | $21,478.00 |
| 52 | 04/25/2019 | 05/02/2019 | A.H. | 37229 | Medicare | $21,478.00 |
| 53 | 04/25/2019 | 05/02/2019 | T.D. | 37229 | Medicare | $21,478.00 |
| 54 | 05/09/2019 | 05/17/2019 | R.L. | 37229 | CHP | $21,478.00 |
| 55 | 06/10/2019 | 06/13/2019 | S.G. | 37229 | Florida Blue | $21,478.00 |
| 56 | 06/21/2019 | 06/26/2019 | J.M. | 37229 | Florida Blue | $21,478.00 |
| 57 | 10/17/2019 | 10/24/2019 | T.T. | 37229 | Medicare | $21,478.00 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT FIFTY-EIGHT
## Using a Means of Identification During and in Relation to Health Care Fraud
## 18 U.S.C. §1028A

43. Between on or about May 30, 2018, and on or about July 17, 2018, in the Northern District of Florida, the defendant,

**MOSES D. DEGRAFT-JOHNSON,**

did knowingly use, without lawful authority, a means of identification of another person, to wit, the name, date of birth, and Medicare beneficiary number of R.J.L., during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), namely, health care fraud in violation of Title 18 United States Code, Section 1347, as charged in Counts Thirteen, Sixteen, Seventeen, and Nineteen of this Indictment.

In violation of Title 18, United States Code, Section 1028A(a)(1).

## CRIMINAL FORFEITURE

44. The allegations contained in Counts One through Count Fifty Eight of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures to the United States pursuant to the provisions of Title 18, United States Code, Section 982(a)(7). Upon the conviction of the violations alleged in Counts One through Count Fifty Eight of this Indictment, as applicable to each defendant, the defendants,

**MOSES D. DEGRAFT-JOHNSON**
and
**KIMBERLY J. AUSTIN,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any and all of the defendant's right, title, and interest in any property, real and personal, constituting, and derived from, gross proceeds traceable to such offenses.

45. If any of the property described above as being subject to forfeiture pursuant to Counts One through Count Fifty Eight of this Indictment, as a result of any act or omission of any defendant:

   i. cannot be located upon the exercise of due diligence;

   ii. has been transferred or sold to, or deposited with, a third person;

   iii. has been placed beyond the jurisdiction of this Court;

   iv. has been substantially diminished in value; or

   v. has been commingled with other property that cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property up to the value of the property subject to forfeiture under the provisions of Title 21, United

States Code, Section 853(p), which is incorporated by reference in Title 18, United

States Code, Section 982.

A TRUE BILL:

FOREPERSON

DATE 2/4/2020

LAWRENCE KEEFE
United States Attorney

ANDREW J. GROGAN
Assistant United States Attorney